

**ORDERED in the Southern District of Florida on April 07, 2010.**

**Paul G. Hyman, Chief Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

In re:                                         Case No.:  07-15492-BKC-PGH

Frank A. Amelung, Jr.,
Eugenia M. Amelung,                            Chapter 7

     Debtors.
_____/

Michael R. Bakst, Trustee,

     Plaintiff.

v.                                             Adv Proc. No.: 09-01719-BKC-PGH

Michael Lester,

     Defendant.
_____/

**MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART**
**TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**

    This matter came before the Court on January 29, 2010, upon

Michael R. Bakst as Trustee's *Motion for Summary Judgment*

1

*against Defendant Michael Lester* (the "Motion for Summary Judgment").

## PROCEDURAL BACKGROUND

On July 13, 2007, Frank A. Amelung, Jr. ("Mr. Amelung") and Eugenia M. Amelung (collectively with Mr. Amelung, the "Debtors") filed a joint petition for relief under Chapter 7 of the Bankruptcy Code. On the same day, Michael R. Bakst was appointed as the Chapter 7 Trustee ("Trustee"). On July 10, 2009, the Trustee filed a Complaint ("Complaint") against Michael Lester ("Defendant") initiating this adversary proceeding. The five-Count Complaint seeks to avoid and recover an allegedly fraudulent transfer in the amount of $20,000.00 pursuant to 11 U.S.C. § 544, Fla. Stat. §§ 726.105(1)(a)&(b), 726.106(1), and 11 U.S.C. § 550. The Complaint also seeks to disallow Defendant's claim against the Debtors' estate pursuant to 11 U.S.C. § 502(d). On November 13, 2009, the Defendant filed an Answer and Affirmative Defenses to the Complaint ("Answer").

On February 11, 2010, the Court entered an *Order Setting Briefing Schedule on Plaintiff's Motion for Summary Judgment* ("Briefing Order"), which set deadlines for filing a joint stipulation of facts, a response by the Defendant to the Motion for Summary Judgment, and a reply by the Trustee to the Defendant's response. Despite the Briefing Order's warning that: "Failure to file a timely response may result in the granting of

2

the Motion", the Defendant filed *no response* to the Motion for Summary Judgment.

On March 4, 2010, the Trustee filed a *Motion to Compel Defendant's Compliance with the Joint Stipulation of Facts Requirement Set Forth in the Court's Briefing Schedule* ("Motion to Compel"), wherein the Trustee stated that the Defendant had been unresponsive to requests for Defendant's comments on the Trustee's proposed joint stipulation of facts. At a hearing conducted on March 16, 2010, the Court granted Trustee's Motion to Compel and gave the Defendant five days to respond to the Trustee's draft stipulation of facts or otherwise comply with the requirement set forth in the Briefing Order. The Defendant failed to comply with the Order Granting Motion to Compel. Thus, pursuant to the Order Granting Motion to Compel, the Court is herewith ruling on the Motion for Summary Judgment based upon the record submitted by the Trustee. This includes Soneet Kapila's, CPA, CIRA, CFF, CFE, Affidavit and Expert Report (the "Kapila Report")(D.E. #38), the transcript of the January 19, 2010 telephonic deposition of the Defendant ("Transcript")(D.E. #39), and the Defendant's Response to Plaintiff's First Set of Interrogatories (D.E. #31). For the reasons stated below, the Court finds that summary judgment in favor of the Trustee is warranted in part.

## FACTS ESTABLISHED BY TRUSTEE'S SUBMISSIONS

The Trustee's submissions, filed in support of his Motion for Summary Judgment, establish the following facts. The Defendant was the Director of Operations and Development for Peerless Real Estate Services ("Peerless"), an entity of which the Debtor, Mr. Amelung, was a principal. (Transcript 12:22-25, 13:1-6, 20:25, 21:1-6). On or about March 24, 2005, a transfer was made by Mr. Amelung to the Defendant in the amount of $20,000.00 (the "Transfer"). (Answer ¶7; Transcript 20:15-22). The Defendant admitted he was the initial transferee of the funds in the amount of $20,000.00. (Answer ¶7; Transcript 20:15-22). The funds were sent via wire transfer to the Defendant's account from a personal account of Mr. Amelung. (Transcript 24:1-25, 25:1-14, 28:17-25). The Defendant was not involved in any business transactions with the Debtors in their individual capacities, and the Debtors were not obligated to pay the Defendant $20,000.00. (Transcript, 23:2-11, 26:1-10, 29:21-25, 30:1-16). On May 15, 2009, the Trustee made written demand upon the Defendant for repayment of the Transfer. (Transcript 27:20-22). The Defendant failed to return the $20,000.00.

The claims register in the Debtors' Chapter 7 case shows that on October 2, 2007, Michael Lester and Julie Lester filed a proof of claim in the amount of $91,252.00.

4

## CONCLUSIONS OF LAW

### I.    *Jurisdiction and Venue*

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (H). Venue is proper pursuant to 28 U.S.C. § 1409.

### II.    *Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056(c), provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Rice v. Braniger Org., Inc.*, 922 F.2d 788 (11th Cir. 1991); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525 (11th Cir. 1987); *In re Pierre*, 198 B.R. 389 (Bankr. S.D. Fla. 1996). Rule 56 is based upon the principle that if the court is made aware of the absence of genuine issues of material fact, the court should, upon motion, promptly adjudicate the legal questions which remain and terminate the case, thus avoiding the delay and expense associated with a

5

trial. *See United States v. Feinstein*, 717 F. Supp. 1552 (S.D. Fla. 1989).

In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987) (*citing Anderson*, 477 U.S. at 248). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex* 477 U.S. at 327 (*citing* Fed R. Civ. P. 1).

The party moving for summary judgment initially bears the burden of establishing the absence of a genuine issue as to any material fact. *Celotex*, 477 U.S. at 322 (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970)). That burden can be satisfied by demonstrating the absence of evidence supporting the nonmovant's case. *Celotex*, 477 U.S. at 325. When a motion for summary judgment is made and supported by the movant, Federal Rule of Civil Procedure 56(e) requires the nonmoving party to set forth specific facts demonstrating that genuine

6

issues of material fact remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### III. *11 U.S.C. § 544 and Florida Uniform Fraudulent Transfer Act*

The federal and state fraudulent conveyance statutes are designed to prevent harm to creditors by a transfer of property from the debtor. *Sears Petroleum & Transp. Corp. v. Burgess Constr. Serv., Inc.,* 417 F. Supp. 2d 212, 222 (D. Mass. 2006); *In re Leneve*, 341 B.R. 53, 56 (Bankr. S.D. Fla. 2006). Section 544(b) of the Bankruptcy Code, commonly referred to as the "strong arm" clause, gives the Trustee the power to avoid transfers of property of the debtor that are voidable under state law. *In re Van Diepen, P.A.*, 236 Fed. Appx. 498, 501 (11th Cir. 2007)(*citing Munford Inc. v. Valuation Research Corp.*, 98 F.3d 604, 609 (11th Cir.1996)); *see also In re Int'l Pharmacy & Discount II, Inc.*, 443 F.3d 767, 770 (11th Cir. 2005) ("Under 11 U.S.C. § 544(b), a trustee in bankruptcy may 'step into the shoes' of an unsecured creditor and void a transfer of an interest in the debtor's property that the unsecured creditor would have the power to void under federal or state law."). Florida's Uniform Fraudulent Transfer Act, the applicable nonbankruptcy law in this matter, allows a creditor to bring a fraudulent transfer action to set aside a constructively or actually fraudulent attempt to hide assets. *Steffen v. Gray, Harris & Robinson, P.A.*, 283 F. Supp. 2d 1272, 1284 (M.D. Fla.

7

2003) (*citing* Fla. Stat. § 726.101, *et seq.*). In this matter, the Trustee seeks to avoid the Transfer under 11 U.S.C. §544(b), Florida's constructive fraud statutes, §§ 726.105(1)(b) & 726.106(1), and under Florida's actual fraud statute, § 726.105(1)(a).

## A. Constructive Fraud - Count II § 726.105(1)(b) & Count III § 726.106(1)

Florida Statutes §§ 726.105(1)(b)[1] and 726.106(1)[2] "deal with transfers made by a debtor without receiving reasonably equivalent value in exchange for the obligation while the debtor was insolvent or intended to incur or believed or should have believed that he or she would incur debts beyond his or her ability to pay as they became due." *In re Goldberg*, 229 B.R. 877, 884 (Bankr. S.D. Fla. 1998). Florida's constructive fraud statutes do not require proof of fraudulent intent. *See Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485,

---

[1] Florida Statute § 726.105(1)(b) provides:
    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: without receiving reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
        1. was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
        2. intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.
[2] Florida Statute § 726.106(1) provides:
    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the claim arose before the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving reasonably equivalent value in exchange for the transfer or obligation, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

1499 (11th Cir. 1997). "To demonstrate constructive fraud, the trustee must prove that the debtor was insolvent at the time the transfer was made and that the debtor received less than reasonably equivalent value in exchange for the transfer." *In re World Vision Entm't, Inc.*, 275 B.R. 641, 657 (Bankr. M.D. Fla. 2002); *see also In re Aqua Clear Tech., Inc.*, 361 B.R. 567, 584 (Bankr. S.D. Fla. 2007)(" Transfers made for less than reasonably equivalent value that were made when the Debtor was insolvent, or caused the insolvency, are . . . avoidable under Florida law.") (*citing* Fla. Stat. §§ 726.105(1)(b) and 726.106).

**1.   The Debtors did not receive reasonably equivalent value**

In this matter, the record establishes that the Transfer was made from the personal account of the Debtor, Mr. Amelung to the Defendant. The Defendant's position is that the Transfer was made in respect of a business transaction he had with Peerless, a third party. "Generally, transfers made or obligations incurred solely for the benefit of third parties do not furnish reasonably equivalent value." *In re Chicago, Missouri & Western Ry. Co.*, 124 B.R. 769, 772 (Bankr. N.D. Ill. 1991)(*citing Bullard v. Aluminum Co. of America*, 468 F.2d 11, 14 (7th Cir.1972)); *see also In re Computer Universe, Inc.*, 58 B.R. 28, 30 (Bankr. M.D. Fla. 1986) ("As a general rule, an insolvent debtor receives less than a reasonably equivalent value where it

transfers its property in exchange for consideration which passes to a third party.").

In his deposition, the Defendant testified that he was not involved in any business transactions with the Debtors in their individual capacities, and that the Debtors were not obligated to pay the Defendant $20,000.00. When asked if the Debtors in their individual capacities received anything from the Defendant in exchange for the Transfer, the Defendant stated "no", but that he had no way of knowing if Mr. Amelung was reimbursed by Peerless. (Transcript 30:2-7). The Court notes that there has been more than adequate time for the Defendant to conduct discovery on this issue given that this adversary proceeding was commenced on July 10, 2009. Based upon the Defendant's deposition testimony, the Court concludes that the Defendant provided no consideration to the Debtors in exchange for the Transfer, and thus, the Transfer was made for less than reasonably equivalent value.

2.   **The Debtors were insolvent at the time of the Transfer**

The record also establishes that the Transfer was made while the Debtors were insolvent. Pursuant to Fla. Stat. § 726.103(1), "a debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." Fla. Stat. § 726.103(1). Under the Bankruptcy Code, the term "insolvent" means-

10

(A) with reference to an entity other a partnership and a municipality, financial condition such that the sum such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of –

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
(ii) property that may be exempted from property of the estate under section 522 of this title;

11 U.S.C. § 101(32)(A).

The Kapila Report states that, in Mr. Kapila's expert opinion, at the time of the Transfer on March 24, 2005:

a) the Debtors were insolvent as defined within 11 U.S.C. § 101(32) and Chapter 726, Florida Statutes;

b) the Debtors were indebted in an amount greater than the transfer;

c) the Debtors had incurred debts beyond their ability to pay as they became due; and

d) the Debtors were indebted to creditors in an amount in excess of the transfer.

*Kapila Report* ¶5. Based upon Mr. Kapila's Affidavit, the Court finds Mr. Kapila is competent as an expert in such matters. In addition, the Court finds that, based upon the Kapila Report, the Debtors were insolvent at the time of the Transfer.

For the reasons stated above, the Court finds in favor of the Trustee as to Counts II and III of the Complaint. Because the Transfer was made for less than reasonably equivalent value when the Debtors were insolvent, the Transfer is constructively fraudulent and may be avoided by the Trustee pursuant to 11 U.S.C. § 544(b) and Fla. Stat. §§ 726.105(1)(b) and  726.106(1).

11

The Trustee may recover the avoided Transfer pursuant to 11 U.S.C. § 550.

**B.  Actual Fraudulent Intent - Count I § 726.105(1)(a)**

In addition to permitting the avoidance of constructively fraudulent transfers, Florida law also provides for avoidance of transfers made with actual intent to hinder, delay or defraud creditors. Florida Statutes § 726.105(1)(a) states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of debtor.

Fla. Stat. § 726.105(1)(a).

"Because proof of actual intent is often unavailable through direct evidence, courts have traditionally relied upon certain well-defined badges or indicia of fraud to presume fraudulent intent." *In re Warner*, 87 B.R. 199, 202 (Bankr. M.D. Fla. 1988). Florida Statutes § 726.105(2)(a)-(k) provides a non-exclusive list of badges of fraud which provide circumstantial evidence of actual fraudulent intent.[3] "[I]t is clear from the

_____

[3] Fla. Stat. § 726.105(2) provides:
In determining actual intent under paragraph (1)(a), consideration may be given, among other factors, to whether:
(a)  The transfer or obligation was to an insider.
(b)  The debtor retained possession or control of the property transferred after the transfer.
(c)  The transfer or obligation was disclosed or concealed.
(d)  Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(e)  The transfer was of substantially all the debtor's assets.
(f)  The debtor absconded.

12

language of the Statute that in determining intent, consideration may be given to factors other than those listed." *Yale Materials Handling Corp.*, 119 F.3d at 1498 (*citing In re Miller*, 188 B.R. 302, 306 (Bankr. M.D. Fla. 1995)). "While '[a] single badge of fraud may only create a suspicious circumstance and may not constitute the requisite fraud to set aside a conveyance, ... several of them when considered together may afford a basis to infer fraud.'" *Id.* (alterations in original) (*quoting Johnson v. Dowell*, 592 So.2d 1194, 1197 (Fla. 2d DCA 1992)).

The Trustee argues that the Transfer is tainted by the following five alleged badges of fraud: 1) there was no consideration for the Transfer; 2) the Debtors were insolvent at the time of the Transfer; 3) the Transfer was concealed and not disclosed on the Debtors' Statement of Financial Affairs; 4) there was litigation pending or threatened; and 5) there was a close relationship between Mr. Amelung and the Defendant. The Court has already determined the first two badges of fraud, *i.e.*, that there was a lack of consideration for the Transfer

---

 (g) The debtor removed or concealed assets.
 (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
 (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
 (j) The transfer occurred shortly before or shortly after a substantial debt was incurred.
 (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.
Fla. Stat. § 726.105(2)(a)-(k).

13

and that the Debtors were insolvent at the time of the Transfer. The Court finds, however, that the Trustee has not met his burden to establish the existence of the three remaining alleged indicia of fraud.

The Trustee argues that the Transfer was concealed and not listed on the Debtors' Schedules or Statement of Financial Affairs. The Court notes that the Trustee has not indicated where on their Schedules the Debtors ought to have listed the Transfer. In addition, the Statement of Financial Affairs at item 10(a) asks only for information regarding transfers made within two years prior to the commencement of the case. The March 24, 2005 Transfer at issue was made more than two years prior to July 13, 2007 commencement of the case. Accordingly, the Debtors were not required to disclose the Transfer in answer to this question. Thus, the Court concludes that the Transfer was not concealed.

The Trustee also argues that, as shown by the Debtors' Statement of Financial Affairs and the Kapila Report, "there was litigation against the Debtor relating to issues existing at the time of the transfer of funds on or around March 24, 2005". Pending of threatened litigation *at the time* of a transfer is indeed an indicia of fraud. While the Debtors' Statement of Financial Affairs and the Kapila Report both show that litigation was pending against the Debtors within one year prior

14

to the commencement of the case, neither shows that litigation was pending or threatened *at the time* of the March 2005 Transfer. The Kapila Report indicates that litigation was filed against the Debtors in 2007 and 2008. The Statement of Financial Affairs at question 4(a) asks only for information relating to suits and administrative proceedings to which the debtor was or is a party within one year immediately preceding the filing of the bankruptcy case. The Debtors listed ten such proceedings in answer to this question. The Debtors' answer to this question indentified nine of the ten listed actions with case numbers. No case number was listed for the remaining lawsuit. All of the listed case numbers appear to indicate that the cases were filed in 2007. Based upon this record, the Trustee has not shown that any lawsuits were pending at the time of the Transfer in March 2005. Furthermore, the Trustee provided no evidence to show that there was any litigation threatened at the time of the Transfer. Thus, as to this badge of fraud, the Trustee has not met his burden to show that there was pending or threatened litigation at the time of the Transfer.

As to the relationship between Mr. Amelung and the Defendant, the Trustee states that Mr. Amelung was a principal of Peerless, a company in which the Defendant was a director. The Court notes that such a relationship does not make the Defendant an "insider" of the Debtors under Fla. Stat. §

726.103(7)(a)[4]. Although a close business relationship may also be indicative of fraudulent intent, the fact that the Defendant was a Director of Operations and Development of a company in which Mr. Amelung was a principal is insufficient in itself to support a finding that the Transfer was made with actual intent to hinder, delay or defraud creditors. The Court finds that there are insufficient indicia of actual fraudulent intent to avoid the Transfer under Fla. Stat. § 726.105(1)(a). Thus, the Court finds in favor of the Defendant as to Count I.

**IV.  *Count V - Disallowance of Claim Under 11 U.S.C. § 502(d)***

Count V seeks disallowance of the Defendant's claim in this bankruptcy pursuant to 11 U.S.C. § 502(d). "The purposes of § 502(d)[5] are to foster the equality of distribution among class members and to compel compliance with orders of the Court." *In re TI Acquisition, LLC*, 410 B.R. 742, 749 (Bankr. N.D. Ga. 2009). Pursuant to 11 U.S.C. § 502(d), any claims of the

---

[4] Fla. Stat. §726.103(7)(a) defines the term "insider" to include:
(a) If the debtor is an individual:
1. A relative of the debtor or of a general partner of the debtor;
2. A partnership in which the debtor is a general partner;
3. A general partner in a partnership described in subparagraph 2.; or
4. A corporation of which the debtor is a director, officer, or person in control;

[5] 11 U.S.C. 502(d) provides:
Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

16

Defendant against the estate are disallowed until such time as the Defendant pays the Trustee the amount of the Transfer. As explained by the court in *TI Acquisition*:

> The most straightforward case for the applicability of § 502(d) would be the factual situation in which a debtor has obtained a judgment [in] an avoidance action against a creditor and the creditor has also filed a claim against the estate for sums owed pre-petition by the debtor. In such a case, the creditor's claim would be disallowed until it paid the amount of the judgment to the debtor pursuant to § 502(d). *Id.*

This matter presents a similar factual pattern. The Court has herewith determined that the Transfer was fraudulent pursuant to Fla. Stat. §§ 726.105(1)(b) and 726.106(1), and must be turned over to the Trustee. Under 11 U.S.C. § 502(d), the Defendant's claim, filed against the estate in the amount of $91,252.00, must be disallowed until such time as the Defendant pays the Trustee the amount of the Transfer. Therefore, the Court finds in favor of the Trustee as to Count V.

### V. Defendant's Affirmative Defenses are Unavailing

The Defendant asserted the following affirmative defenses in his Answer: 1) the Complaint should be dismissed for failure to state a cause of action; 2) the Complaint should be dismissed because it is barred by the doctrine of laches and the statute of limitations; and 3) the Complaint should be dismissed for lack of jurisdiction over the Defendant. As discussed below, all of the asserted affirmative defenses fail as a matter of law.

17

**A. Failure to State a Cause of Action**

The first defense raised by the Defendant is a conclusory statement that, the "Complaint should be dismissed for failure to state a cause of action." To grant a motion to dismiss for failure to state a cause of action, the Court must find that the Trustee's complaint, factually accepted as true, evidences no set of facts entitling the Trustee to relief. *Brandt v. Lazard Freres & Co., LLC*, 1997 WL 469325, at *2 (S.D. Fla. Aug. 1, 1997); *see also In re Alford,* 381 B.R. 336, 343 (Bankr. M.D. Fla. 2007) ("It is well-established that a complaint or counterclaim should not be dismissed for failure to state a cause of action unless 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'"). In this matter, the Trustee has not only alleged sufficient facts, but provided evidence in support of his causes of action. Moreover, the Court is entering judgment in favor of the Trustee on several Counts of the Complaint. Thus, this defense is unavailing.

**B.   Laches and Statute of Limitations**

The second defense raised by the Defendant is that, the "Complaint should be dismissed because it is barred by the doctrine of laches and the applicable statute of limitations." "Laches is an affirmative defense, and as such, the burden of proving it is on those who assert it." *In re Olde Florida Inv.,*

18

*Ltd.* 293 B.R. 531, 544 (Bankr. M.D. Fla. 2003). To establish the
affirmative defense of laches, "a defendant must demonstrate 1)
a delay in asserting a right or a claim, 2) that the delay was
not excusable, and 3) that there was undue prejudice to the
party against whom the claim is asserted." *In re Sly*, 305 B.R.
67, 71 (Bankr. N.D. Fla. 2003) (*quoting AmBrit, Inc. v. Kraft,
Inc.*, 812 F.2d 1531, 1545 (11th Cir. 1986)). "With regard to the
third factor, undue prejudice, a defendant must demonstrate with
particularity the prejudice it will suffer if laches is not
applied." *Id.* The Court found nothing in the record to suggest
that the Trustee inexcusably delayed bringing this action. In
addition, the Defendant neither responded to the Motion for
Summary Judgment nor alleged any facts to show that the Trustee
inexcusably delayed bringing this action such that the Defendant
will suffer undue prejudice if the Trustee prevails. The
affirmative defense of laches is unsupported by the record.

The statute of limitations defense is likewise unavailing.
The applicable statute of limitations, 11 U.S.C. § 546,[6] allows

---

[6] 11 U.S.C. § 546(a) states:
An action or proceeding under section 544, 545, 547, 548, or 553 of this
title may not be commenced after the earlier of--
(1) the later of--
(A) 2 years after the entry of the order for relief; or
(B) 1 year after the appointment or election of the first trustee under
section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or
such election occurs before the expiration of the period specified in
subparagraph (A); or
(2) the time the case is closed or dismissed.
11 U.S.C. § 546(a)
"Certainly, the wording of this statute is somewhat confusing. At its core,

the Trustee to commence a § 544 action utilizing state law within two years of the Trustee's initial appointment, provided however that the state law statute of limitations period had not expired at the time of the bankruptcy filing. *In re Florida West Gateway, Inc.*, 182 B.R. 595, 598 (Bankr. S.D. Fla. 1995); *Sears Petroleum & Transport Corp.*, 419 F. Supp. 2d 212, 225 (D. Mass. 2006); *see also In re Seaway Int'l Transport, Inc.*, 341 B.R. 333, 335 (Bankr. S.D. Fla. 2006) ("the Trustee may bring utilize the state fraudulent conveyance statutes which have a four year state of limitations").

Thus, the issue of whether this action was timely filed requires a two-step analysis. The first inquiry is whether the action was timely filed within two years of the Trustee's appointment as required by § 546. The Trustee in this case was appointed on July 13, 2007. The Complaint initiating this adversary proceeding was filed on July 10, 2009. The Complaint, having been filed within two years of the Trustee's initial appointment, was timely filed under § 546. The next question is whether the action would have been timely if it had been brought on the petition date. The statute of limitations for actions under § 726.105(b) or § 726.106(1) is four years. *See* Fla. Stat.

---

'it requires the action be brought within the earlier of two years after the trustee is appointed or before the close of the bankruptcy proceeding.'" *In re Sears* Petroleum. 417 F.Supp. 2d at 225 (*quoting* In re Martin, 142 B.R. 260, 266 (Bankr.N.D.Ill.1992)).

§ 726.110(2). The Debtors filed for bankruptcy on July 13, 2007. The action would have been timely as of the petition date because the March 24, 2005 Transfer occurred not more than four years prior to the petition date. The Court concludes that the Trustee timely filed the Complaint pursuant to 11 U.S.C. § 544 and Fla. Stat. § 726.110(2) which allow the Trustee to bring an action to avoid fraudulent transfers occurring four years prior to the petition date, and pursuant to 11 U.S.C. § 546 which allows the Trustee to commence such an action up to two years from the date of the bankruptcy filing. The Defendant's assertion of the affirmative defense of laches and statute of limitations is unsupported by the law and the facts of record.

## C.  Jurisdiction

The third defense raised by the Defendant is that, the "Complaint should be dismissed because Defendant is not subject to the jurisdiction of this Court." In his Answer, the Defendant states that he has not done business within the State of Florida and denies that he is subject to the jurisdiction of this Court or subject to Chapter 726 of the Florida Statutes. The Court notes that, "Congress has expressly provided bankruptcy courts with federal question jurisdiction over all bankruptcy cases and proceedings." *In re Charter Oil, Co.*, 189 B.R. 527, 529 (Bankr. M.D. Fla. 1995) (*citing* 28 U.S.C. § 1334). The legislative history of 28 U.S.C. § 1334 shows Congress' intention that

21

"bankruptcy courts will exercise *in personam* jurisdiction as well as *in rem* jurisdiction in order that they may handle everything that arises in the bankruptcy case." *Id.* at n.2 (*quoting* Senate Report 95-989, U.S. Code Cong. & Admin. News 1978, pp. 5787, 5939 on Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, § 216, 92 Stat. 2549 (1978) (codified as amended at 28 U.S.C. § 1334 (1994)). Furthermore, Bankruptcy Rule 7004(d) provides for nationwide service of process. *See* Fed. Bankr. R. P. 7004(d). "Under Rule 7004(d), the bankruptcy courts can exercise personal jurisdiction without applying a minimum contacts analysis and remain in constitutional harmony with the Due Process Clause of the Fifth Amendment." *Id*. (*citing* 14 Lawrence P. King, Collier on Bankruptcy ¶ 7004.06 (14th ed. 1976)). Thus, Defendant's minimum contacts argument is misplaced in the bankruptcy context. *See In re KO Trucking Co., Inc.,* 99 B.R. 78, 79 (N.D. Ala. 1988) ("courts have consistently rejected applying the minimum contacts test to bankruptcy jurisdiction") (collected citations omitted).

Defendant's assertion that he is not subject to Chapter 726 of the Florida Statutes is also misplaced. The Trustee's ability to bring this action is derived from 11 U.S.C. § 544(b)'s "strong arm" powers which allow the Trustee to adopt as federal law any applicable non-bankruptcy law. *In re Florida West Gateway. Inc.,* 182 B.R. at 598. The applicable non-bankruptcy

22

law adopted as federal law in this matter is contained within Chapter 726 of the Florida Statutes. In addition, the Court also has jurisdiction over the Defendant based upon his voluntary participation in the Debtors' bankruptcy proceeding. By filing a claim in this bankruptcy, the Defendant submitted himself to the jurisdiction of this Court. *See In re Hillsborough Holdings Corp.*, 267 B.R. 882, 892 (Bankr. M.D. Fla. 2001). Finally, pursuant to 11 U.S.C. § 1409, this action was properly brought in this Court.

For the reasons stated above, the Defendant's three asserted affirmative defenses fail as a matter of law.

<u>**CONCLUSION**</u>

The Court finds entry of summary judgment in favor of the Trustee is appropriate with respect to Counts II, III, IV & V of the Complaint. The Trustee may avoid the constructively fraudulent Transfer pursuant to 11 U.S.C. § 544, and Fla. Stat. §§ 726.105(1)(b) and 726.106 (1). The Trustee may recover the Transfer from the Defendant pursuant to 11 U.S.C. § 550. The Defendant's claim against the Bankruptcy Estate is disallowed pursuant to 11 U.S. C. § 506(d) until such time as the Defendant satisfies his obligation to pay the Trustee the amount of the Transfer. The Court finds in favor of the Defendant on Count I as the Trustee did not meet his burden to show that the Transfer

23

was made with actual fraudulent intent pursuant to 11 U.S.C. § 544 and Fla. Stat. §726.105(1)(a).

## ORDER

The Court, having reviewed the applicable law, the submissions of the parties, and being otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES** that:

**ORDERED AND ADJUDGED** that:

1. The Trustee's Motion for Summary Judgment is **GRANTED IN PART** as follows:

   a.    The Court enters judgment in favor of the Trustee on Count II and III of the Complaint. The Transfer of $20,000.00 made by the Debtor Mr. Amelung to the Defendant is fraudulent pursuant to 11 U.S.C. §544 and Fla. Stat. §§ 726.105(1)(b) and 726.106(1)and may be avoided by the Trustee.

   b.    The Court enters judgment in favor of the Trustee on Count IV of the Complaint. The Trustee may recover the Transfer of $20,000.00 pursuant to 11 U.S.C. §550.

   c.    The Court finds in favor of the Trustee on Count V of the Complaint. The Defendant's claim against the estate is disallowed until such time as the Defendant pays the Trustee the amount of the Transfer pursuant to 11  U.S.C. §506(d).

2. The Trustee's Motion for Summary Judgment is **DENIED IN PART.** The Court finds in favor of the Defendant on Count I of the Complaint.

3. Pursuant to Federal Rule of Bankruptcy Procedure 9021, a separate final judgment shall be entered by the Court contemporaneously herewith.

# # #

Copies furnished to:
Michael Bakst, Trustee
Victor Berwin, Esq.

Michael Lester
1408 Barbara Street
Mount Pleasant, SC 29464-4502

AUST

Atty. Berwin is directed to serve a copy of this order on any
interested party not listed above.